UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                       Case No. 8:03-cr-177-T-17MSS
                                    8:05-cv-933-T-17MSS

LONNIE LEE NICHOLS, JR.,

_____

O R D E R

This cause is before the Court on Defendant Lonnie Lee Nichols' 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (Doc. cv-1; cr-40).

PROCEDURAL HISTORY

On May 1, 2003, a grand jury sitting in the Middle District of Florida returned an indictment charging Nichols with possessing fifty grams or more of methamphetamine, with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). Doc. cr-1. Nichols subsequently entered into a written plea agreement with the United States, Doc. cr-22, and, in accordance with that agreement, pled guilty to this charge, Doc. cr-26; Doc. cr-30 at 31-32.

On April 16, 2004, this Court sentenced Nichols to the mandatory minimum

sentence required by 21 U.S.C. § 841(b)(1)(A)(viii) (i.e., due to his criminal history), life imprisonment. Docs. cr-32, cr-33.

Nichols did not pursue a direct appeal. See Doc. cr-40 at 2. Almost a year later, after the United States Supreme Court had issued its decision in United States v. Booker, 543 U.S. 220 (2005), Nichols filed a motion for modification of sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that he should be resentenced under the post-Booker advisory federal sentencing guidelines scheme. Doc. cr-35. This Court denied that motion. Doc. cr-39. Nichols did not seek appellate review of that decision. See Doc. cr-40 at 4.

On April 20, 2005, Nichols filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence in case no. 8:05-cv-763-T-17MSS.[1] On April 26, 2005, the Court ordered Nichols to file an amended motion to vacate. His new motion was given the present civil case number and case number 8:05-cv-763-T-17MSS was closed.

In his section 2255 motion and amended memorandum of law, Nichols raises a host of issues, many of which are inextricably intertwined: (1) that in light of the

---

[1] Affording Nichols the benefit of the mailbox rule, see Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001), this Court may deem the motion filed as of the date he signed it, April 18, 2005, see Civ. Doc. 3 at 1. Also, and as explained in the show cause order in this case, Civ. Doc. 3 at 1, this section 2255 motion initially was docketed and considered in Case No. 8:05-cv-763-T-17MSS, which since has been closed, Civ. Doc. 3 at 2.

Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny (including Booker and Blakely v. Washington, 542 U.S. 296 (2004)), this Court erred in applying the USSG §2D1.1(b)(1) "dangerous weapon" enhancement, in imposing upon him the mandatory minimum term of life imprisonment required by section 841(b)(1)(A)(viii), based on his criminal history, in not requiring a finding as to the specific form (i.e., "injectable liquid" or otherwise) of methamphetamine Nichols had possessed, and, more generally, in sentencing him pursuant to the pre-Booker mandatory guidelines scheme;[2] (2) that 21 U.S.C. § 811(a), which grants the Attorney General the power to reclassify controlled substances, acts as an unconstitutional delegation of legislative power; (3) that his counsel was constitutionally ineffective for failing to assert Nichols' Apprendi/Booker based arguments and his constitutional challenge to section 811(a) at sentencing or on direct appeal;[3] (4) that his conviction was based on evidence obtained in violation of the Fourth Amendment; and (5) that the United States breached Nichols' plea agreement

---

[2] Although Nichols characterizes his Apprendi/Booker-based arguments as "actual innocence" claims, what he actually is arguing is that this Court's application of the challenged enhancements violates the Sixth Amendment and deprives him of due process. Anyway, these various enhancements have no bearing on Nichols' guilt of the drug possession charge to which he pled guilty and, instead, concern only his sentence.

[3] Unlike the Defendant in Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005) (discussing "well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonably manner per se"), Nichols does not claim that he specifically requested that his attorney file an appeal.

by opposing his Booker-based section 3582(c)(2) motion for modification of sentence and, finally, that the change in the law resulting from Booker rendered involuntary his prior guilty plea. See generally Doc. cr-40; cv-5.

## BACKGROUND

On March 13, 2003, authorities conducted a consensual search of the residence Nichols shared with his girlfriend and recovered approximately 65.8 grams of "actual" methamphetamine. Doc. cr-22 at 14-15; Doc. cr-30 at 28-30. Nichols later admitted that all of this methamphetamine had belonged to him, and that he had intended to distribute it. Doc. cr-2222 at 15; Doc. cr-30 at 30. Nichols further admitted that over the preceding forty-five days, he had received approximately one pound of methamphetamine each day from his supplier. Doc. cr-22 at 15; Doc. cr-30 at 30.

The plea agreement Nichols executed in this case included a provision that expressly defined and delimited the circumstances in which Nichols would be permitted to challenge--either directly or collaterally--his sentence, and it advised that he would be sentenced in accordance with the federal sentencing guidelines:

> The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. . . . Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, . . . except for an upward

departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines . . . .

Doc. cr-22 at 12.

During Nichols' rearraignment hearing, a magistrate judge of this Court repeatedly warned Nichols that he faced a mandatory minimum sentence of life imprisonment, Doc. cr-30 at 14, 16, 19, 22, 24, 31-32, and confirmed that Nichols was aware of the appeal/collateral challenge waiver provision contained in his plea agreement and understood its significant consequences:

> THE COURT: In light of the dire consequences that would apply in this case, you need to be particularly concerned about Paragraph 5 on Page 12 of the plea agreement. . . . [W]hat you are doing in entering this plea is you are giving up your right to appeal your sentence.
>
> Once you give up this right, you cannot get it back. Do you understand that?
>
> DEFENDANT NICHOLS: Yes, ma'am.
>
> THE COURT: . . . . By signing this plea agreement you are giving up your right to file any such appeals except in the very limited circumstances that are set forth in this plea agreement.
>
> . . . .
>
> Second, if the Court were to impose a sentence that violated the law in some way other than the calculation of the guideline range, you could file an appeal of that sentence claiming it to be illegal.
>
> And, third, if the Court were to impose a sentence that exceeded the statutory maximum, which is impossible in this case because the

statutory maximum is life and the mandatory minimum is life. Do you understand that?

    DEFENDANT NICHOLS: Yes, ma'am.

    THE COURT: Do you understand, sir, that by entering a plea in this case you are giving up your right to file an appeal?

    DEFENDANT NICHOLS: Yes, ma'am.

    THE COURT: Did anyone threaten you to get you to waive your right to appeal?

    DEFENDANT NICHOLS: No, ma'am.

    THE COURT: Did anyone promise you anything in exchange for that waiver other than what is in this plea agreement?

    DEFENDANT NICHOLS: No, ma'am.

Doc. cr-30 at 20-22. During this hearing, moreover, Nichols expressly confirmed that he did not contest any of the prior felony drug convictions that provided the basis for the mandatory life sentence he faced. Doc. cr-30 at 13-14.

Nichols did not file a direct appeal. Instead, he filed the present timely section 2255 motion, see n. 1.

Waiver

It is well established that a voluntary, unconditional guilty plea waives all nonjurisdictional challenges to the constitutionality of the conviction that arose prior to the plea. See, e.g., Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992)

(guilty plea waives pre-plea ineffective assistance of counsel claim in a section 2255 proceeding); Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (guilty plea waives speedy trial and due process challenges in a section 2255 proceeding; collecting cases); Franklin v. United States, 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding Miranda warnings, coerced confessions, perjury, and illegal searches and seizures in a section 2255 proceeding).

In this case, Nichols argues that the change in the law resulting from Booker rendered his prior guilty plea involuntary. Doc. cr-40 at 7; cv-5 at 16-18. Both the Supreme Court and the Eleventh Circuit, however, have squarely rejected the argument that an unanticipated change in the law renders an otherwise knowing and voluntary guilty plea involuntary. See Brady v. United States, 397 U.S. 742, 757 (1970) (observing that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise"); United States v. Sanchez, 269 F.3d 1250, 1283-85 (11th Cir. 2001) (en banc) (in light of Brady, rejecting argument that Apprendi invalidated defendants' guilty pleas). Nor has Nichols pointed to anything else in the record demonstrating that his plea was anything other than knowing and voluntary.[4]

---

[4] To the contrary, during Nichols' rearraignment hearing, the magistrate judge made every effort to ensure that Nichols clearly understood the serious consequences of his plea, most notably

Under these circumstances, Nichols has waived his Fourth Amendment argument and his challenge to the constitutionality of section 811(a), as both of those challenges existed at the time of his plea and neither is jurisdictional in nature. See, e.g., Franklin, 589 F.2d at 194-95. Moreover, to the extent that Nichols' ineffective assistance of counsel argument may be read to include a derivative claim challenging his counsel's failure to raise these arguments before this Court or on direct appeal, that claim, which does not concern Nichols' decision to plead guilty, likewise has been waived. See Wilson, 962 F.2d at 997.

In addition to the foregoing, by virtue of his written plea agreement in this case, Nichols also has waived his post-guilty plea Apprendi/Booker-based sentence challenges. The right to appeal is statutory and can be waived if done so knowingly and voluntarily. United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.), cert. denied, 125 S. Ct. 2279 (2005); Williams v. United States, 396 F.3d 1340, 1341 (11th Cir.), cert. denied, 125 S.Ct. 2279 (2005); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). For this Court to enforce a sentence appeal waiver, the United States need only demonstrate either (1) that the district court specifically questioned the defendant concerning the sentence appeal waiver during the Fed. R. Crim. P. 11 colloquy or (2) that it is clear from the record that the defendant otherwise understood

---

the fact that he faced a mandatory minimum life sentence. See, e.g., Doc. cr 30 at 14, 16, 19, 22, 24, 31-32.

the full significance of the waiver. Grinard-Henry, 399 F.3d at 1296; Williams, 396 F.3d at 1341; Bushert, 997 F.2d at 1351.

A defendant's waiver of the right to appeal "directly or collaterally[,]" see Doc. cr-22 at 12, encompasses the right to challenge his sentence in a section 2255 proceeding. See, e.g., Williams, 396 F.3d at 1342; United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001); Davila v. United States, 258 F.3d 448, 451-52 (6th Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1183-87 (10th Cir. 2001); Mason v. United States, 211 F.3d 1065, 1068-69 (7th Cir. 2000). Moreover, the waiver also is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams, 396 F.3d at 1342; see also Cockerham, 237 F.3d at 1183-87 (appeal and collateral attack waiver provision in plea agreement waives ineffective assistance of counsel collateral challenge unless challenge concerns validity of plea or waiver); Mason, 211 F.3d at 1069 (same). In particular, if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim also was waived. See Williams, 396 F.3d at 1341-42 (acknowledging that exceptions in plea agreement

to defendant's waiver of appeal did not apply to the claims raised in defendant's section 2255 motion); <u>United States v. Djelevic</u>, 161 F.3d 104, 107 (2d Cir. 1998) (although "dress[ed] up" as a Sixth Amendment claim, defendant's sentencing challenge was barred by the plea agreement).

In this case, Nichols' plea agreement expressly limited the circumstances in which he may challenge--either directly or collaterally--his sentence. Doc. cr-22 at 12. Moreover, during Nichols' rearraignment hearing, the magistrate judge confirmed that Nichols was aware of the appeal/collateral challenge waiver provision in his plea agreement and understood its significant consequences. Doc. cr-30 at 20-22.

Despite his knowing and voluntary plea, Nichols now argues that in light of <u>Apprendi</u> and its progeny, including <u>Blakely</u> and <u>Booker</u>, this Court erred in: (1) applying the USSG §2D1.1(b)(1) "dangerous weapon" enhancement to determine the guidelines range applicable to him; (2) relying on four of his prior felony convictions as a basis to impose the mandatory minimum term of life imprisonment required by section 841(b)(1)(A)(viii); (3) not requiring a finding as to the specific form (i.e., "injectable liquid" or otherwise) of methamphetamine he had possessed; and (4) sentencing him pursuant to the pre-Booker mandatory guidelines scheme. See generally, Doc. cr-40; cv-5.

Nichols' various <u>Apprendi/Booker</u>-based arguments challenging the manner in

which this Court calculated his sentence fall squarely within the purview of the appeal/collateral challenge waiver provision contained in his plea agreement. [5] See, e.g., United States v. Frye, 402 F.3d 1123, 1129 (11th 5 Cir.) (determining that Booker-based challenge to previously-governing mandatory guidelines scheme waived by appeal waiver provision), cert. denied, 125 S. Ct. 2986 (2005); Grinard-Henry, 399 F.3d at 1296-97 (analyzing appeal/collateral challenge waiver provision identical to the one involved in this case and concluding that Apprendi/Blakely/Booker-based Sixth Amendment challenge did not implicate any of the exceptions to that provision). Moreover, Nichols' related claim that his counsel was ineffective for failing to challenge these calculations before this Court or on direct appeal likewise is waived, as that claim addresses his sentence and the manner in which it was determined, not the validity of his plea or the waiver. See Williams, 396 F.3d at 1342 & n.2; accord Davila, 258 F.3d at 451-52; Mason, 211 F.3d at 1068-69; Djelevic, 161 F.3d at 107. In addition to waiving his preplea constitutional challenges, therefore, Nichols also has waived his post-plea Apprendi/Booker-based sentencing arguments.[6]

---

[5] Nichols' argument that this Court erred in relying on his criminal history to determine that the mandatory minimum life sentence required by section 841(b)(1)(A)(viii) was applicable does not even implicate Apprendi and its progeny. See, e.g., United States v. Gallegos-Aguero, 409 F.3d 1274, 1276-77 (11th Cir. 2005).

[6] Although Nichols' argument that the United States breached his plea agreement by opposing the section 3582(c)(2) motion he filed after Booker was decided, see Doc. cr-40 at 7; cv-5 at 16-18,

## Procedural Default

Ordinarily, claims that previously were available but were not raised on direct appeal are procedurally defaulted and barred from consideration on collateral review.[7] See, e.g., Bousley v. United States, 523 U.S. 614, 622-24 7 (1998); Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir.), cert. denied, 125 S. Ct. 167 (2004); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). There are, however, two exceptions to the procedural default rule: under the first exception, a defendant must show "cause" for not raising the claim of error on direct appeal and "actual prejudice" from the alleged error; alternatively, a defendant may show that a constitutional error "has probably resulted in the conviction of one who is actually innocent." Bousley, 523 U.S. at 622-23 (internal quotation marks and citation omitted).

As previously noted, in this case, Nichols never filed a direct appeal. See Doc. cr-40 at 2. Nor did Nichols challenge on appeal this Court's subsequent denial of the motion for modification of sentence pursuant to section 3582(c)(2) he filed after

---

was not a pre-plea claim waived by his guilty plea or a post-plea sentencing claim waived pursuant to the appeal/collateral challenge provision of his plea agreement, that claim is meritless. No provision of Nichols' plea agreement provides or even suggests that the United States must refrain from opposing a post-judgment motion pursuant to 3582(c)(2) seeking relief that is not contemplated by that statute. See generally Doc. cr-22; see also Doc. cr-38 (United States' opposition to Nichols' section 3582(c)(2) motion detailing why that motion was meritless).

[7] By virtue of the Supreme Court's decision in Massaro v. United States, 538 U.S. 500, 504, 509 (2003), ineffective assistance of counsel claims do not fall within the purview of this general rule.

Booker was decided. See Doc. cr-40 at 4. Consequently, only Nichols' ineffective assistance of counsel claims have not been procedurally defaulted. However, the derivative ineffective assistance of counsel claims have no merit.

To establish cause for not raising a claim on direct appeal, a defendant must show "'some external impediment preventing counsel from constructing or raising the claim.'" High v. Head, 209 F.3d 1257, 1262 (11th Cir. 2000) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)). In his section 2255 motion, Nichols attempts to explain his procedural default as follows, "This is the first opportunity Petitioner [Nichols] has had to present these issues." Doc. cr-40 at 6. More generally, however, Nichols also argues that his counsel was ineffective for failing to file a direct appeal. See, e.g., Doc. cr-40 at 5; cv- 5 at 12-13. But see note 3: "Unlike the Defendant in Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005) (discussing "well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonably manner per se"), Nichols does not claim that he specifically requested that his attorney file an appeal.

Although a defendant can establish cause in some circumstances by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 690 (1984), see Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002), to do so, the defendant must fully

13

allege and prove deficient performance that worked to his actual and substantial disadvantage. See Reece v. United States, 119 F.3d 1462, 1465-68 (11th Cir. 1997). Nichols cannot meet this burden.

A defendant's counsel is not ineffective for failing to raise claims "reasonably considered to be without merit[,]" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation marks and citation omitted), or for failing to anticipate changes in the law, see, e.g., Davis v. Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). At the time of Nichols' (pre-Blakely) sentencing in April 2004, any Apprendi-based challenge to this Court's application of the sentencing guidelines almost certainly would have been deemed meritless. See Sanchez, 269 F.3d at 1262 (observing, "Apprendi does not apply to judge-made determinations pursuant to the Sentencing Guidelines"). This would have remained the case, moreover, even after the Supreme Court issued Blakely in June 2004. See United States v. Reese, 382 F.3d 1308, 1312 (11th Cir. 2004), cert. granted, judgment vacated, 125 S. Ct. 1089, on remand, 397 F.3d 1337, 1338 (11th Cir. 2005).

Likewise, decades before Nichols' sentencing, both the former Fifth Circuit and the Eleventh Circuit had rejected constitutional challenges to the delegation of authority to schedule drugs resulting from section 811. See, e.g., United States v. Hope, 714 F.2d 1084, 1087 (11th Cir. 1983) (analyzing section 811(e)); United States

v. Gordon, 580 F.2d 827, 840 (1978) (concluding that "delegation of the authority to schedule drugs [pursuant to section 811(a)] is constitutionally permissible"); see also United States v. Lane, 931 F.2d 40, 41 (11th Cir. 1991) (rejecting as "meritless" argument that Attorney General improperly had reclassified methamphetamine to a schedule II drug).

Moreover, as previously explained, by virtue of his unconditional guilty plea in this case, see generally Docs. cr-22; cr-30, Nichols waived his Fourth Amendment argument, see Franklin, 589 F.2d at 194-95; on appeal, therefore, that argument also would have been meritless. Under these circumstances, Nichols' counsel was not ineffective for failing to raise his Apprendi/Booker-based arguments, his constitutional challenge to section 811(a), or his Fourth Amendment argument at sentencing or on direct appeal.[8]

Nor has Nichols offered any reasonable explanation for his failure to challenge on appeal this Court's denial of his section 3582(c)(2) motion. Consequently, in

---

[8] To the extent that Nichols' motion and memorandum may be read also to challenge his counsel's failure to object to the section 2D1.1(b)(1) dangerous weapon enhancement and the use of four of his prior felony drug convictions on grounds other than Apprendi, any such challenges still would provide no basis for collateral relief. Thus, based on Nichols' express acknowledgment during the rearraignment hearing that he had been convicted of each of the prior drug offenses that provided the basis for the section 841(b)(1)(A)(viii) mandatory life sentence, see Doc. cr-30 at 13-14, Nichols' counsel could not successfully have challenged this Court's reliance on those convictions to determine his sentence. Moreover, by virtue of this mandatory life sentence, Nichols cannot establish that he was prejudiced by his counsel's failure to challenge the dangerous weapon enhancement, as that enhancement had absolutely no bearing on his ultimate sentence.

addition to being patently meritless, Nichols' issues relating to that motion have been defaulted. Finally, none of Nichols' arguments implicates the "actual innocence" excuse for procedural default, which requires a defendant to demonstrate "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. Nichols, therefore, has failed to establish any legitimate reason to excuse his procedural default.

Nichols' various arguments challenging this Court's application of the federal sentencing guidelines to calculate his sentence are premised on the Supreme Court's decisions in Apprendi and its progeny. Although the Supreme Court in Booker, did extend the rule of Apprendi to the federal guidelines scheme, that decision does not apply retroactively to Nichols' sentence. See Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (determining that "Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review"). Consequently, relief pursuant to Booker is not available to federal prisoners whose convictions were final on the date Booker was announced. Varela, 400 F.3d at 867-68.

Nichols' sentence became final on May 5, 2004, more than eight months before the Supreme Court decided Booker on January 12, 2005. In the circumstances of this case, therefore, Nichols may not rely on Booker's extension of the procedural rule of Apprendi to the federal sentencing guidelines to challenge this Court's determination

of his sentence.

Accordingly, the Court orders:

That Nichols' motion to vacate (Doc. cv-1;cr-40) is denied.  The Clerk is directed to enter judgment against Nichols in the civil case and to close that case.

ORDERED at Tampa, Florida, on April 28, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Todd B. Grandy
Lonnie Lee Nichols, Jr., Pro se